FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT
E.D.N.Y.
*MARCH 25, 2026*
BROOKLYN OFFICE

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

FIRST STUDENT, INC.,

        Plaintiff,

-v-

INTERNATIONAL
BROTHERHOOD OF
TEAMSTERS, LOCAL NO. 1205,

        Defendant.

CIVIL ACTION NO.: 2:26-CV-1770

Judge Sanket J. Bulsara

Magistrate Judge Anne Y. Shields

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION BY ORDER TO SHOW CAUSE FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**(Hearing Requested)**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND.............................................................................................. 3

I.    First Student and the Local Union Negotiated and Entered Into a Four-Year Collective Bargaining Agreement......................................................................................... 4

II.    The Local Union and the Teamsters Are Threatening to Strike Unless First Student Agrees to New Terms that Contradict the Local CBA................................................................ 5

III.    A Strike Would Cause Substantial Harm to First Student and the Public.......................... 8

ARGUMENT....................................................................................................................... 9

I.    This Court Has Jurisdiction To Enjoin Defendants' Unlawful Conduct............................... 9

II.    First Student Satisfies The Traditional Test For A Preliminary Injunction......................... 12

A.    A Strike Would Cause Irreparable Harm to First Student......................................... 12

B.    There Are Serious Questions Going To The Merits, the Balance of Hardships Favors First Student, and First Student is Likely to Succeed on the Merits of its Claim ........................... 15

1.    Serious Questions and the Balance of Hardships. .......................................... 16

2.    First Student Is Likely To Succeed On The Merits Of Its Claims................................ 18

III.    The Court May Enjoin an Imminent Strike to Prevent Harm......................................... 21

CONCLUSION................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham & Straus, Inc. v. Int'l Union of Operating Eng'rs, Local Union No. 30,*
806 F. Supp. 366 (E.D.N.Y. 1992) .................................................................14, 21

*Boys Markets, Inc. v. Retail Clerks,*
398 U.S. 235 (1970)................................................................................ *passim*

*Carpet Et Cetera, Inc. v. Forde,*
2006 U.S. Dist. LEXIS 77036 (S.D.N.Y. Oct. 16, 2006) ....................................20

*Catalytic, Inc. v. Monmouth & Ocean County Bldg. Trades Council,*
829 F.2d 430 (3d Cir. 1987)..............................................................................21, 22

*CF&I Steel Corp. v. United Mine Workers,*
507 F.2d 170 (10th Cir. 1974) ...........................................................................22

*Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.,*
598 F.3d 30 (2d Cir. 2010)...........................................................................12, 16, 18

*Columbia Typographical Union, No. 101 v. The Evening Star Newspaper Co.,*
1978 U.S. Dist. LEXIS 6926 (Dec. 31, 1978) .....................................................20

*Commc'n Workers of Am. v. W. Elec. Co.,*
430 F. Supp. 969 (S.D.N.Y. 1977) .....................................................................16

*Eng v. Smith,*
849 F.2d 80 (2d Cir. 1988).................................................................................18

*Hoh v. Pepsico, Inc.,*
491 F.2d 556 (2d Cir. 1974)...............................................................................15

*Int'l Ass'n of Machinists & Aerospace Workers v. Panoramic Corp.,*
668 F.2d 276 (7th Cir. 1981) .............................................................................15

*Jacobson & Co. v. Armstrong Cork Co.,*
548 F.2d 438 (2d Cir. 1977)...............................................................................12

*MV Transportation, Inc. v. Amalgamated Transit Union, Local 1764,*
2011 U.S. Dist. LEXIS 62608 (D. Md. 2011) ....................................................14

*N.Y. Times Co. v. Newspaper & Mail Deliverers' Union,*
592 F. Supp. 1043 (S.D.N.Y. 1984)....................................................................22

*Niagara Hooker Emps. Union v. Occidental Chem. Corp.*,
  935 F.2d 1370 (2d Cir. 1991)...................................................................................10, 15

*Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co.*,
  749 F.2d 124 (2d Cir. 1984)...............................................................................................16

*St. Barnabas Hosp. v. 1199 Nat'l Health & Human Serv. Emples. Union*,
  No. 96-7834, 1996 U.S. App. LEXIS 25248 (2d Cir. Sep. 13, 1996) ...............................21

*Teachers Asso. of Japanese Educational Institute, Inc. v. Japanese Educational Institute*,
  724 F. Supp. 188 (S.D.N.Y. 1989) .............................................................................13, 15

*United Parcel Service, Inc. v. Int'l Brotherhood of Teamsters*,
  698 F.2d 100 (2d Cir. 1983)...........................................................................11, 13, 14

*Will Poultry Co. v. Teamsters Local No. 264*,
  2013 U.S. Dist. LEXIS 175406 (W.D.N.Y. Dec. 10, 2013)...........................................13

*Will Poultry, Inc. v. Teamsters Local 264*,
  2013 U.S. Dist. LEXIS 180072 (W.D.N.Y. Dec. 23, 2013)....................................... *passim*

**Statutes**

29 U.S.C. § 52, First .........................................................................................................1, 2

29 U.S.C. § 185(a) ...........................................................................................................2, 9

Labor Management Relations Act Section 301 ...........................................................2, 9, 10

*National Labor Relations Act* ..............................................................................................21

Norris-LaGuardia Act, 29 U.S.C. § 104 .............................................................................10

Norris-LaGuardia Act Section 8, 29 U.S.C. § 108 ............................................................11

**Other Authorities**

Fed. R. Civ. P. 65.................................................................................................................1

*The Developing Labor Law: The Board, the Courts, and the National Labor Relations Act, Chp. 17*, 17.IV.B.1.a (2025) .......................................................................21

## INTRODUCTION

National labor policy encourages parties to engage in collective bargaining and preserve labor peace through the execution and enforcement of collective bargaining agreements. Defendant International Brotherhood of Teamsters, Local Union No. 1205 (the "Local Union") is subverting this policy and seeking to achieve ends that are at odds with the plain language of the collective bargaining agreement ("Local CBA") it has negotiated with Plaintiff First Student. Accordingly, pursuant to Fed. R. Civ. P. 65, and 29 U.S.C. § 52, First Student requests that this Court issue a temporary restraining order and preliminary injunction to prevent the Local Union and those acting in concert with it from striking and/or engaging in any other unlawful, disruptive economic activity and direct the Local Union to arbitrate its disputes in compliance with its collective bargaining agreement with First Student.

First Student is a student transportation company operating in forty-three states, including New York. School districts hire First Student to drive students to and from school each day in buses and vans. First Student employs thousands of bus and van drivers. Many of those drivers are represented by locally organized unions, such as the Local Union. These unions are affiliated with the International Brotherhood of Teamsters (the "Teamsters"). First Student is party to hundreds of collective bargaining agreements with local Teamsters unions.

In 2023, First Student bargained in good faith with the Local Union to reach the four-year Local CBA. The Local CBA will not expire until 2027. The Local CBA comprehensively governs employees' terms and conditions of employment. The Local CBA also contains the central *quid pro quo* of any labor agreement, a commitment by the Local Union not to strike or engage in any other economic activity in exchange for a grievance and binding arbitration process to resolve any disputes relating to the agreement. The parties also agreed not to change any terms of the Local CBA without mutual consent. First Student provided valuable consideration for these provisions,

1

so that it would ensure delivery of its essential transportation services to the children of the community. In other words, First Student bargained successfully for labor peace for four years.

Now, with more than a year left in the Local CBA's term, the Local Union is disregarding its promise of labor peace. The Local Union, in concert with the Teamsters and other affiliated unions, is engaging in a threatened strike and other economic pressure in an attempt to impose changes to the Local CBA's provisions governing minimum guaranteed pay, retirement plan contributions, healthcare premium contributions, and other terms. Disputes about these provisions are grievable and subject to mandatory arbitration under the Local CBA. The harm the Union's actions will cause the community and the company is near incalculable. The Local Union is threatening to stop driving children to school as leverage to impose the Teamsters' demands on settled contractual terms, nullifying the Local CBA's grievance and arbitration provisions.

In light of the Local Union's threat to strike, First Student asked the Local Union for assurances that it will abide by its contract and not strike, but the Local Union has refused to provide any such assurances. First Student has formally demanded that the Local Union arbitrate its disputes and is prepared to proceed to arbitration in accordance with the terms of the Local CBA. Given the Local Union's intransigence, unlawful economic pressure is being brought to bear and an unlawful strike is imminent.

Section 301 of the Labor Management Relations Act creates a cause of action for breaching collective bargaining agreements. 29 U.S.C. § 185(a). Under 29 U.S.C. § 52 and the Supreme Court's decision in *Boys Markets, Inc. v. Retail Clerks*, 398 U.S. 235 (1970), this Court can, and should, enjoin the Local Union's strike and other disruptive activity to facilitate arbitration and prevent irreparable harm. Injunctive relief is appropriate where a collective bargaining agreement

2

calls for mandatory arbitration, a union threatens to strike over an arbitrable grievance, and the plaintiff can satisfy the traditional test for injunctive relief. *See Boys Markets*, 398 U.S. at 253-54.

This case satisfies the injunctive relief criteria. First Student would be irreparably harmed absent an injunction. Indeed, if drivers go on strike, the consequences would be catastrophic. A strike would prevent First Student from performing its contractual obligation to transport students to and from school. First Student would face massive economic harm, including loss of contracts with schools and school districts. First Student also would face reputational damage from which it might never recover. And First Student would not be the only victim. Far from it. The students who depend on First Student would lose their transportation to and from school. Parents would have to scramble to make alternative arrangements or keep their children home. This harm would vastly outweigh any harm that an injunction could cause to the Local Union.

A union demanding different terms or different interpretation of current terms of a collective bargaining agreement is undoubtedly raising a grievable issue. The parties have agreed, under the Local CBA, to have an arbitrator decide such disputes. The Local Union has no other recourse and is expressly prohibited from engaging in strikes or other economic activity to force First Student to accept its position. Thus, First Student is likely to succeed on the merits of its claim that the Local Union must arbitrate rather than strike or engage in other unlawful economic activity – and at the very least, has undoubtedly established serious questions as to that claim.

Accordingly, the Court should grant First Student's motion. The Court should enjoin the Local Union and all other parties acting in concert with it from going on strike and should require the Local Union to arbitrate its disputes concerning the Local CBA.

## FACTUAL BACKGROUND

As stated in First Student's Complaint, filed contemporaneously herewith, First Student is a nationwide transportation company that contracts with school districts to transport students to

3

and from school in buses and vans. Affidavit of Dean Suhre ("Suhre Aff.") ¶2. Among the New York school districts with whom First Student has contracts is Longwood Central School District. *Id.* ¶8. First Student is party to collective bargaining agreements with hundreds of Teamsters-affiliated local unions across the country. *Id.* ¶6. One of those unions is the Local Union. *Id.* ¶7. The Local Union represents about 100 First Student employees. *Id.*

## I.     First Student and the Local Union Negotiated and Entered Into a Four-Year Collective Bargaining Agreement

First Student bargained with the Local Union in good faith concerning terms and conditions of employment for the school van drivers who transport students to Longwood Central School District. Affidavit of Andrew Joppa ("Joppa Aff.") ¶¶8-23. These negotiations culminated in the Local CBA. *Id.* ¶23. The Local CBA became effective on July 1, 2023. *Id.* It will expire on June 30, 2027, more than a year from now. *Id.*; Joppa Aff. Exhibit B, Art. 30.

The Local CBA memorializes the complete understanding between the parties while in effect, and it provides "during which time there shall be no reopening to consider wages, working conditions or other terms of employment other than as set forth [in the CBA]...." Joppa Aff. Exhibit B, Art. 30. The only method by which a change can be made is by mutual consent.

The Local CBA also contains a no-strike clause, in Article 11, which provides,

> 11.1:  "[N]o employee shall engage in, without limitation on the following, any strike, sit-down, sit-in, slow-down, sympathy strike, picket, cessation or stoppage or interruption of work or boycott interfering with or initiated against the operations of the Employer."

Joppa Aff. Exhibit B, Art. 11.1.

The Local CBA sets out detailed terms of employment, including terms governing minimum guaranteed pay, retirement plan contributions, healthcare premium contributions, and other terms. The Local CBA says, at Article 1, that the Local Union is the exclusive representative

4

for the "purpose of collective bargaining with respect to the rates of pay, hours of work, and other conditions of employment[.]" Joppa Aff. Exhibit B, Art. 1.

To resolve disputes arising under the Local CBA, the agreement provides a mandatory grievance-and-arbitration procedure in Article 10. Article 10 defines "grievance" as "any controversy, complaint, misunderstanding or dispute" and says that "any differences arising between the Employer and the Union as to the meaning or application of the provisions of this Agreement shall be settled in the … manner" set forth in the Local CBA. Joppa Aff. Exhibit B, Art. 10. And "[i]f no agreement can be reached" then "either party may refer the matter to arbitration" and they "agree to accept the decision of the arbitrator as final and binding." Joppa Aff. Exhibit B, Art. 10.3, 10.5.

In addition to the Local CBA, First Student is party to approximately 260 other collective bargaining agreements with local Teamsters unions. Joppa Aff. ¶5. Like the Local CBA, these agreements contain no-strike provisions and grievance and arbitration procedures, as well as similar bargained-for and agreed-upon terms concerning minimum guaranteed pay, retirement plan contributions, healthcare premium contributions, and other terms. Joppa Aff. ¶6.

## II.    The Local Union and the Teamsters Are Threatening to Strike Unless First Student Agrees to New Terms that Contradict the Local CBA

In addition to, and separate from, the local collective bargaining agreements, First Student is party to a National Master First Student Agreement with the Teamsters (the "National Agreement"). Joppa Aff. ¶24. The National Agreement, unlike the Local CBA, contains general non-economic terms relating to all employees represented by unions affiliated with the Teamsters. *Id.* The National Agreement will expire on March 31, 2026. *Id.* ¶25. In January 2026, the Teamsters and First Student began negotiating a new national agreement. *Id.* ¶¶26-27. The Teamsters, in concert with the Local Union and other local unions, demand that First Student

5

accept a litany of nationwide terms that conflict with currently operative, locally negotiated collective bargaining agreements, including the Local CBA. *Id.* ¶¶27-30; Joppa Aff. Exhibit B. The Teamsters' demands that contravene the Local CBA are listed in the following chart:

| Topic | Teamsters' Demand | Local CBA Terms |
|---|---|---|
| Guaranteed Daily Minimum Hours | The Teamsters demand that First Student guarantee all employees be granted no less than six (6) hours daily work or pay. | Article 21 offers drivers guaranteed pay of four and one half hours in the school year and four hours in the summer. |
| Overtime | The Teamsters demand that all paid time count towards the weekly calculation of overtime, including time not worked, such as PTO and holidays. | Article 15 of the CBA provides that "[a]ll hours worked in excess of forty (40) hours in a workweek shall be compensated at time and a half (1 ½) the employee's regular straight time hourly rate of pay and/or a blended rate if applicable during the pay period." |
| Personal Days | The Teamsters demand that employees receive no less than three paid personal days per year with pay based on regularly scheduled hours, or minimum hours, whichever is greater. | Article 16 of the CBA provides that all drivers and driver's assistants shall be guaranteed 38 weeks of employment along with one to two weeks of supplemental pay based on the seniority of the driver. Given this guarantee, the CBA does not also include paid personal days. |
| Holidays | The Teamsters demand that employees get no less than eight holidays during the normal school year | The CBA does not include paid holidays, as employees are instead guaranteed 38 paid weeks as described in Article 16. |
| Cancellation Days | The Teamsters demand that employees receive regular pay for cancellation days, virtual school days and distance learning school days. | The CBA does not include cancellation days, as employees are instead guaranteed 38 paid weeks as described in Article 16. |
| Retirement Plan | The Teamsters demand that First Student agree to provide retirement benefits to employees through Company contributions to the Western Conference of Teamsters Pension Fund. The minimum starting hourly contribution would be $0.50. | Article 18 of the CBA provides that First Student will "participate in the Teamsters-National 401(K) Saving Plan." First Student agreed to contribute $25 dollars per month beginning in 2023, $50 per month beginning in 2025, and $75 dollars per month beginning in 2026. |

6

| Health Insurance | The Teamsters demand that First Student offer a Teamsters health insurance plan and contribute 80% to monthly premiums, for all tiers of coverage. | Article 17 of the CBA provides that First Student will contribute eighty percent of the cost of single-only coverage, with employees paying the remaining balance for additional dependents. |
|---|---|---|

First Student has not agreed to the Teamsters' demands and does not consent to changing the terms of its currently operative local collective bargaining agreements, including the Local CBA. Joppa Aff. ¶31. First Student and the Local Union carefully negotiated the above-listed terms during their 2023 bargaining sessions. *Id.* ¶¶9-23. The parties exchanged proposals and counterproposals, made compromises, and reached agreements after careful consideration. *Id.*

For example, the parties made a compromise on guaranteed daily minimum hours. Joppa Aff. ¶16. When bargaining for the Local CBA, First Student offered a daily guarantee of four-and-a-half-hours during the school year and a four-hour guarantee during the summer. *Id.* The Local Union countered with a six-and-a-half-hour daily guarantee. *Id.* First Student maintained its position. *Id.* In the end, the Local Union agreed to First Student's proposal. *Id.*

The Teamsters, with the Local Union and others, have authorized a nationwide strike unless First Student acquiesces to the above-listed demands. Joppa Aff. ¶31. On March 12, 2026, the Teamsters issued a written bargaining update about their negotiations with First Student. Joppa Aff. ¶31; Joppa Aff. Exhibit B. In that update, the Teamsters declared that they are authorizing an imminent, nationwide strike to begin once the National agreement expires on March 31, 2026. *Id.* The Teamsters further informed their members that First Student employees will be called to participate in the strike regardless of whether their local collective bargaining agreements contain promises not to do so. *Id.* ¶32. The Local CBA, however, remains in full force and effect through June 30, 2027. *Id.* ¶23. The Local CBA's no-strike clause and grievance-and-arbitration

provisions continue to bind the Local Union and its members. Joppa Aff. Exhibit B Art. 10-11. On March 20, 2026, First Student asked the Local Union to provide assurances that it will not participate in a strike. The Local Union has not provided such assurances.

Under Article 30 of the Local CBA, the parties cannot amend the terms of the agreement without mutual consent. Joppa Aff. ¶35; Joppa Aff. Exhibit B Art. 30. First Student does not consent to change the terms of the Local CBA. Joppa Aff. ¶35. Under the grievance and arbitration process in Article 10 of the Local CBA, the Local Union must grieve and arbitrate any disputes relating to the terms of the Local CBA. *Id.* It has not done so. *Id.* ¶¶35-37.

On March 24, 2026, First Student filed a Demand for Arbitration with the Local Union. Joppa Aff. ¶36. In its demand, First Student stated that the Local Union's insistence on making mid-term modifications to the Local CBA is a violation of its contractual obligations and the explicit prohibitions of Article 30. *Id.* First Student cannot be bullied into "reopening [] wages, working conditions or other terms of employment" which both parties agreed would be prohibited during the term of the agreement. Joppa Aff. ¶36; Joppa Aff. Exhibit B Art. 30. The Local Union also is violating Articles 15, 16, 17, 18, 19 and 21, and provisions concerning retirement, health insurance, minimum guaranteed hours per day, calculation of eligibility for overtime pay, among others. The Local Union refuses to arbitrate. Joppa Aff. ¶37.

## III. A Strike Would Cause Substantial Harm to First Student and the Public

If the Local Union strikes in violation of the Local CBA, it will cause serious harm to First Student and the public. First Student would not be able to fulfill its contractual duty to transport students to and from Longwood Central School District. Suhre Aff. ¶¶13-23. First Student does not have backup resources, such as replacement drivers, to provide student transportation services in the event of a strike. Suhre Aff. ¶15. Consequently, a strike will devastate First Student's advantageous business and contractual relationship with Longwood Central School District.

8

A strike also would cause substantial, lasting harm to First Student's competitive position. First Student has been down this road before. In 2018, a local Teamsters-affiliated union in Seattle went on strike for eight days. Suhre Aff. ¶39. That strike caused First Union to lose significant market share when its contracts with Seattle came up for renewal. *Id.* ¶41. Following the strike, when the contract went out to bid, Seattle hired another bus operator to split the routes that First Student had previously serviced exclusively. *Id.* ¶42. As a result, the number of routes First Student handled for Seattle declined from approximately 360 to approximately 198 routes – a reduction of nearly 45 percent. *Id.* ¶43. A strike in Longwood would similarly damage First Student's reputation for reliability and jeopardize its ability to retain and renew its contracts with school districts in the Longwood area and beyond. *Id.* ¶¶45-47.

First Student's reputation as a reliable transportation provider is essential to its business. Suhre Aff. ¶27. A strike would publicly demonstrate that First Student cannot guarantee continuous service, undermining the trust that school districts, parents, and communities place in the company. *Id.* ¶¶27-29. This reputational harm cannot be adequately compensated through monetary damages because it would affect First Student's ability to maintain the confidence of its existing customers and compete for contracts with new customers. *Id.*

A strike also would hurt the public, including more than 700 students at Longwood Central School District and their parents. *Id.* ¶¶13-23. A strike would deny those students reliable transportation to and from school, thereby disrupting their education. *Id.*

## ARGUMENT

### I.     This Court Has Jurisdiction To Enjoin Defendants' Unlawful Conduct

This Court can and should grant the injunction that First Student requests. Under Section 301 of the Labor Management Relations Act ("Section 301"), this Court has jurisdiction to resolve breach-of-contract disputes between employers and labor organizations. 29 U.S.C. § 185(a).

9

Section 301 vests this Court with jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." Pursuant to *Boys Markets, Inc. v. Retail Clerks*, 398 U.S. 235 (1970), this Court can enjoin strikes to protect labor-management peace, preserve the status quo pending resolution of the dispute, and enforce parties' contractual obligation to arbitrate the issues underlying the strike.[1]

The Second Circuit explains that injunctive relief is available under *Boys Markets* if (1) the collective bargaining agreement contains "a no-strike clause"; (2) the strike is "over an arbitrable issue"; and (3) the injunction is "warranted under ordinary principles of equity." *Niagara Hooker Emps. Union v. Occidental Chem. Corp.*, 935 F.2d 1370, 1376 (2d Cir. 1991) (quoting *Boys Markets*, 398 U.S. at 254).

First Student satisfies *Boys Markets*' three-factor test. First Student demonstrates the first factor because the Local CBA contains a no-strike clause. Article 11 of the Local CBA explicitly prohibits the Local Union from "any strike, sit-down, sit-in, slow-down, sympathy strike, picket, cessation or stoppage or interruption of work or boycott interfering with or initiated against the operations of" First Student. Joppa Aff. Exhibit B Art. 11.1.

First Student satisfies the second *Boys Markets* factor because the Local CBA requires the Local Union to arbitrate the issues underlying the impending strike. The grievance and arbitration process is mandatory. Article 10 of the Local CBA requires the parties to grieve "any controversy, complaint, misunderstanding, or dispute." Joppa Aff. Exhibit B Art. 10.1. It also says that "either party may refer the matter to arbitration" and explains that "[s]hould the Employer have a grievance with the Union, it may proceed with that grievance directly to the arbitration phase" of

---

[1] *Boys Markets* carves out an exception to the Norris-LaGuardia Act, 29 U.S.C. § 104, which generally bars injunctions in connection with labor disputes.

the process. *Id.* Art. 10.3, Art. 10.7. The parties "agree to accept the decision of the arbitrator as final and binding." *Id.* Art. 10.5.

The Local Union, in concert with the Teamsters and other local unions, is threatening to strike over its demands regarding agreed-to provisions governing guaranteed minimum hours, overtime, personal days, holidays, cancellation days, retirement benefits, and health insurance. Disputes about any and all of those terms are subject to the Local CBA's mandatory grievance and arbitration process.

The Local CBA also says that it contains the parties' complete understanding of the terms and conditions of their agreement. Changes and amendments are prohibited during the life of the Agreement, except by mutual consent of the parties. Joppa Aff. Exhibit B Art. 19.1. First Student has not consented to the changes that the Local Union and the Teamsters demand. Any dispute that the Local Union may have over First Student's decision to maintain the existing terms of the Local CBA is subject to mandatory grievance and arbitration.

In accordance with Section 8 of the Norris-LaGuardia Act, 29 U.S.C. § 108, courts may inquire into any complainant's "reasonable efforts to settle such dispute either by negotiation or...arbitration." 29 U.S.C. § 108; *United Parcel Service, Inc. v. Int'l Brotherhood of Teamsters*, 698 F.2d 100, 106 (2d Cir. 1983) (explaining that "the overriding emphasis of [§ 108] upon nonjudicial resolution of disputes indicates that the parties must exhaust all reasonable methods of nonjudicial dispute resolution before seeking injunctive relief," but "'every reasonable effort' . . . does not necessarily include a prior demand for arbitration").

First Student has gone above and beyond in reasonably attempting to resolve the Local Union's disputes through the Local CBA's grievance-and-arbitration procedures. On March 20, 2026, First Student sent the Local Union a written request for confirmation that the Local Union

11

would honor its commitments not to strike and to arbitrate disputes. Joppa Aff. ¶33. On March 24, 2026, First Student demanded that the Local Union arbitrate. Joppa Aff. ¶36. These actions demonstrate First Student's efforts to resolve these issues through the Local CBA's grievance-and-arbitration procedures.

To satisfy the third *Boys Markets* factor, that ordinary principles of equity weigh in favor of an injunction, First Student must address "whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance." *Boys Markets*, 398 U.S. at 254. This is, essentially, the traditional test for injunctive relief, which, in the Second Circuit, requires the moving party to show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund, Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (quotations omitted); *Jacobson & Co. v. Armstrong Cork Co.*, 548 F.2d 438, 442 (2d Cir. 1977) ("[I]t simply cannot be maintained that a temporary injunction will not be granted except on a showing of a likelihood of success.").

Because the Local Union's strike would cause irreparable harm to First Student, as explained below, injunctive relief is appropriate if First Student satisfies the second prong of the preliminary injunction test by showing either (a) "serious questions going to the merits" and "a balance of hardships tipping decidedly toward" First Student or (b) a "likelihood of success on the merits." First Student can satisfy either standard.

II.    **First Student Satisfies The Traditional Test For A Preliminary Injunction**

      A.    A Strike Would Cause Irreparable Harm to First Student

The Local Union's strike would cause irreparable harm to First Student in multiple respects. First, irreparable injury occurs where a defendant's actions "would render the arbitral process 'a hollow formality,'" *Teachers Asso. of Japanese Educational Institute, Inc. v. Japanese Educational Institute*, 724 F. Supp. 188, 192 (S.D.N.Y. 1989) (quoting *Lever Bros. Co. v. International Chemical Workers Union*, 554 F.2d 115, 123 (4th Cir. 1976)), or would "undermine the integrity of the arbitral process insofar as the eventual outcome would only be an 'empty victory.'" *Id.* (quoting *Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R. Co.*, 363 U.S. 528, 534 (1960).

In this case, the Local Union is aggressively frustrating the arbitration process. Indeed, the Local Union is attempting to prevent that process from occurring at all. It has refused to engage with First Student's demand to arbitrate, and it fails to pursue arbitration over its own grievances with the Local CBA's current terms. And even if arbitration commences, an arbitration cannot proceed fairly in the shadow of the Local Union's threatened, unlawful strike. First Student cannot arbitrate on equal footing while the Local Union is cratering First Student's business by stranding children who are trying to get to school.

Also, in the context of a *Boys Markets* injunction, "[t]he loss of business, business reputation and customer goodwill due to work stoppages constitutes irreparable harm." *Will Poultry, Inc. v. Teamsters Local 264*, 2013 U.S. Dist. LEXIS 180072, *25 (W.D.N.Y. Dec. 23, 2013) (collecting cases). In *Will Poultry*, the court found irreparable harm where the plaintiff showed "the potential loss of three significant customers as a result of the union's threat to strike" and "the potential loss of customer goodwill." *Will Poultry Co. v. Teamsters Local No. 264*, 2013 U.S. Dist. LEXIS 175406, *5 (W.D.N.Y. Dec. 10, 2013); *see also United Parcel Service, Inc.*, 698 F.2d at 109 n.13 (2d Cir. 1983) (upholding injunction where work stoppages would cause "serious

harm to UPS in its delivery operations and possibly to the general public which is dependent upon such carrier service"); *Abraham & Straus, Inc. v. Int'l Union of Operating Eng'rs, Local Union No. 30*, 806 F. Supp. 366, 373 (E.D.N.Y. 1992) ("injunctive relief is warranted in this case because [plaintiff] has and will continue to suffer irreparable injury to its business and goodwill").

Here, the threatened strike would cause economic and reputational harm to First Student by interfering with its essential business operations. A strike would prevent First Student from fulfilling its contractual obligations to its customers, specifically to transport students to and from schools in the Longwood Central School District. Suhre Aff. ¶¶13-23. First Student cannot drive children to school without drivers. If the Local Union shuts down van service, First Student has no contingency plans, such as replacement drivers, to help it take children to and from school. *Id.* Because First Student will not be able to provide its services, it risks getting sued for breach of contract and losing its contract with the Longwood Central School District – not to mention the countless other current and prospective school district contracts across the country that could be at risk due to reputational harm suffered by First Student. *Id.* ¶¶24-37.

Moreover, because students, including those with special needs, their families, and the schools rely on First Student to provide student transportation, the threatened strike would harm them too. *Id.* ¶¶13-23. This is highly relevant to determining irreparable harm because students' safety and uninterrupted access to education is at stake. *See MV Transportation, Inc. v. Amalgamated Transit Union, Local 1764*, 2011 U.S. Dist. LEXIS 62608, *12-13 (D. Md. 2011) (noting that employer provided transportation to disabled passengers who relied on the service "to arrive at critical medical appointments," which presented "strong safety reasons" favoring injunctive relief); *see also United Parcel Service, Inc.*, 698 F.2d at 109 n.13 (considering "harm . . . to the general public" which was "dependent" on plaintiff's carrier services). More than 700

14

students will lose transportation to and from school if the threatened strike is allowed to proceed. Suhre Aff. ¶12. Their parents would have to find another way to transport them or else keep them home entirely. *Id.* ¶21.

B.      There Are Serious Questions Going To The Merits, the Balance of Hardships Favors First Student, and First Student is Likely to Succeed on the Merits of its Claim

First Student satisfies the second prong of the Second Circuit's traditional test for injunctive relief under either standard -- the standard that requires serious questions going to the merits and an imbalance of hardships, or the standard that requires likelihood of success on the merits of the claim. First Student's claim is that the parties' disputes are subject to mandatory arbitration. When assessing whether there are serious questions, or a likelihood of success, as to that claim, the Court should not consider who is likely to prevail in the underlying disputes concerning the terms of the Local CBA. This is because deciding such questions would encroach upon the role of the arbitrator. *See, e.g., Niagara Hooker*, 935 F.2d at 1375 ("Courts are not to delve into the substantive provisions of such a collective bargaining contract, because this would usurp the function of the arbitrator."); *Teachers Ass'n of Japanese Educ. Inst., Inc. v. Japanese Educ. Inst.*, 724 F. Supp. 188, 193 (S.D.N.Y. 1989) ("A traditional inquiry into the likelihood of success on the merits would encroach upon the role of the arbitrator and thus in labor disputes courts prefer to focus on the alternate requirement for preliminary relief.").[2] Put another way, where there is a minimum showing with respect to the arbitrability of a dispute, this prong is satisfied. *See Will Poultry, Inc.*, 2013 U.S. Dist. LEXIS 180072, at *23-24 (plaintiff met likelihood of success prong by establishing that underlying dispute was arbitrable under CBA); *see also Int'l*

---

[2] This analytical framework, articulated by the Second Circuit in *Niagara Hooker*, superseded and replaced the prior framework articulated in *Hoh v. Pepsico, Inc.*, 491 F.2d 556, 561 (2d Cir. 1974), which asked district courts to assess whether a plaintiff was likely to win the arbitration.

15

*Ass'n of Machinists & Aerospace Workers v. Panoramic Corp.*, 668 F.2d 276, 284-85 (7th Cir. 1981) (collecting cases).  First Student easily satisfies this element.

          1.       Serious Questions and the Balance of Hardships.

First Student shows that there are "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Glob. Mkts., Inc.*, 598 F.3d at 35 (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (7th Cir. 1979); *accord Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co.*, 749 F.2d 124, 126 (2d Cir. 1984) ("Because the equities tip (rather heavily) in favor of granting a preliminary injunction, [First Student] need demonstrate only 'serious questions going to the merits', rather than 'likelihood of success on the merits.'"); *Commc'n Workers of Am. v. W. Elec. Co.*, 430 F. Supp. 969, 978 (S.D.N.Y. 1977) ("[T]he [plaintiff], to obtain injunctive relief in aid of arbitration, must demonstrate . . . 'some likelihood of success,'" to which "it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation") (citations and quotations omitted).

The "serious questions" inquiry is not a "preponderance of the evidence" test.  As the Second Circuit explained in *Citigroup Glob. Mkts., Inc.*, "[r]equiring in every case [requesting injunctive relief] a showing that ultimate success on the merits is more likely than not is unacceptable as a general rule." 598 F.3d at 35.  Rather, showing "serious questions" requires showing something "more than that the chances for success are only 'better than negligible.'" *Id.* at 37 n.7.  A serious question exists, for example, where the parties disagree on a core factual issue. *See, e.g., Roso-Lino Beverage Distribs., Inc.*, 749 F.2d at 126 ("That there are serious questions is clear from the parties' conflicting stories of the reasons Coca-Cola had for ending Roso-Lino's distributorship.").

Here, there are "sufficiently serious questions" going to the merits of First Student's claim for injunctive relief in aid of arbitration so as to make the claim a fair ground for litigation. The Local Union is deploying extra-contractual economic weapons to force First Student into modifying settled contractual terms—health insurance, retirement benefits, guaranteed minimum hours, and overtime. First Student and the Local Union promised to honor those terms, and the requirement to arbitrate any disputes about them, until the Local CBA expires on June 30, 2027. Joppa Aff. Exhibit B, Art. 30. The Local Union impermissibly seeks to alter the agreement more than a year early, and without First Student's consent, and thereby violates the bargained-for terms. First Student demands arbitration over this dispute under the Local CBA's broad grievance and arbitration provision that applies to "any controversy, complaint, misunderstanding, or dispute." There can be no debate that this demand raises serious questions of arbitrability.

The balance of hardships decidedly favors an injunction because the irreparable harm to First Student and the communities it serves from denial of an injunction would far outweigh any harm that an injunction could impose on the Local Union. If the Court denies injunctive relief and the Local Union goes on strike, First Student will suffer immediate and lasting damage to its business relationships, competitive position, and reputation. Such harm cannot be undone or adequately compensated after the fact, particularly where the Local Union causing the harm may not be in a position to afford the damages that would result from its conduct. By contrast, an injunction would not substantially harm the Local Union. It simply would require the Local Union to honor its contractual obligations under the Local CBA, including the no-strike clause in Article 11 and the grievance-and-arbitration procedure in Article 10. The Local Union agreed to be bound by these terms through June 30, 2027. It cannot claim injury from being held to its own agreement. And the Local Union would maintain the right to seek relief through arbitration of any underlying

17

dispute. Consequently, the Local Union will suffer little to no harm from having to comply with its commitments, and the balance of equities strongly favors granting injunctive relief.

2.    First Student Is Likely To Succeed On The Merits Of Its Claims

Having established that the balance of equities favors an injunction and that there are serious questions going to the merits, in addition to irreparable harm, First Student has satisfied the preliminary injunction test and does not have to demonstrate that it is likely to succeed on the merits of its claim. *See Citigroup Glob. Mkts., Inc.,* 598 F.3d at 35. But even if First Student had to show likelihood of success, it could do so.

To demonstrate likelihood of success, First Student "need not show that success is an absolute certainty." *Eng v. Smith,* 849 F.2d 80, 82 (2d Cir. 1988). First Student need only show "that the probability of [its] prevailing is better than fifty percent. There may remain considerable room for doubt." *Id.*

First Student is likely to succeed in showing that the dispute is arbitrable based on the plain language of the CBA. *See Will Poultry, Inc.,* 2013 U.S. Dist. LEXIS 180072 at *13-24 (terms of CBA established likelihood of success on arbitrability of underlying dispute). The Local Union is demanding modifications of the Local CBA's terms. First Student and the Local Union carefully negotiated, settled, and memorialized those terms in 2023. They are bound to honor those terms until the agreement expires on June 30, 2027. Joppa Aff. Exhibit B Art. 30. The parties are likewise bound to rely exclusively on the Local CBA's grievance and arbitration procedures to resolve any disputes concerning the interpretation and enforcement of their agreement. *Id.* Art. 10. And the parties are bound to their mutual commitment not to employ strikes or lockouts to force changes. *Id.* Art. 11. But that is exactly what the Local Union, along with the Teamsters and others, are trying to do.

18

The Local is violating its no strike pledge in an attempt to force sweeping changes to carefully negotiated economic terms. First Student bargained in good faith to settle these issues—guaranteed minimum hours, overtime, personal days, holidays, cancellation days, retirement benefits, and health insurance—for the life of the Local CBA. If there were disagreements regarding what those provisions provided, First Student could rest assured it would not have to defend a strike over the issue. That is what the *Boys Markets* exception is supposed to preserve—the central *quid pro quo* of collective bargaining; no strike in exchange for grievance and arbitration. And that is what the Local Union, in concert with the Teamsters and others, is attempting to destroy.

This unlawful tactic is not new to the Teamsters. In 2013, they followed a similar playbook in *Will Poultry, Inc.*, 2013 U.S. Dist. LEXIS 180072. There, the Teamsters demanded that an employer modify a collective bargaining agreement to add a new clause during the life of the contract. *Will Poultry*, 2013 U.S. Dist. LEXIS 180072 at *4. The Teamsters then threatened, just as they are threatening First Student, to strike if the employer did not accede to their demands. *Id.*

The employer in *Will Poultry* sought and obtained an injunction. The court noted that the parties' collective bargaining agreement, like the one here, required the parties to submit all disputes to arbitration. The court further observed that "the event or condition that trigger[ed]" the threatened strike was, in part, the union's demand for a mid-contract modification of the collective bargaining agreement's terms. *Id.* at *12. The agreement said that "[e]ither party desiring . . . to negotiate changes . . . shall . . ." follow a contractually mandated process. *Id.* at *14. Rather than follow that process, the Teamsters threatened to strike.

The Teamsters contended that their demand for modification constituted a non-arbitrable dispute, but the court disagreed. The court explained that "the plain wording of the contract"

19

required "any disputes arising from the negotiation of changes to the [agreement]" be subject to the agreement's grievance and arbitration procedures. *Id.* at *15. The court determined that the Teamsters' refusal to follow the explicit procedures for negotiating changes was arbitrable and that the employer, therefore, established a likelihood of success on the merits of its claim. The unlawful strike was enjoined. *Id.* at *23-24.

The D.C. District Court has considered similar circumstances and reached the same conclusion. In *Columbia Typographical Union, No. 101 v. The Evening Star Newspaper Co.*, 1978 U.S. Dist. LEXIS 6926, at *1 (Dec. 31, 1978), an employer attempted to force mid-contract negotiations and concessions on a union by threatening to close operations entirely if the union did not accede. The court explained that the "heart of the dispute" was whether the employer could demand concessions or close during the life of a valid collective bargaining agreement, despite the existence of a binding arbitration clause. *Id.* at *4. That issue was arbitrable and, therefore, an injunction was proper. *Id.* at *5.

In this case, like in *Will Poultry*, the Local CBA prohibits the parties from changing the agreement mid-term, but with even stronger language. *See* Joppa Aff. Exhibit B Art. 30 ("[T]here shall be no reopening to consider wages, working conditions or other terms of employment . . . unless terminated by lawful notice."). The Local Union's insistence on forcing changes through a strike violates the agreement and is therefore arbitrable.

Further, by refusing to honor the Local CBA's agreed-upon terms, abandoning its obligation to grieve and arbitrate, and attempting to force concessions, the Local Union is repudiating the Local CBA. Whether the Local Union's conduct constitutes repudiation is itself an arbitrable issue. *See Carpet Et Cetera, Inc. v. Forde*, 2006 U.S. Dist. LEXIS 77036 (S.D.N.Y. Oct. 16, 2006), at *9-11 (citing *Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n, Local*

20

*38*, 351 F.3d 43, 46 (2d Cir. 2003)) (determining whether the union repudiated the contract was a matter reserved for the arbitrators).

Accordingly, First Student is likely to succeed on the merits of its claim that its disputes with the Local Union are exclusively subject to arbitration.

## III.    The Court May Enjoin an Imminent Strike to Prevent Harm

The Court has authority to enjoin the Local Union, and those acting in concert with it, from striking *before* the strike occurs to prevent irreparable harm to First Student. *See Abraham & Straus, Inc.*, 806 F. Supp. at 372 ("Courts have also granted *Boys Markets* relief to forestall a threatened strike, even though no work slowdown or stoppage has taken place.") (citing *Greater N.Y. Health Care Facilities Asso. v. Ottley*, 493 F. Supp. 612 (S.D.N.Y. 1980)) (granting *Boys Markets* injunction to enjoin threatened strike before it commenced). The Court need not wait for hundreds of students to be deprived of transportation to and from school, and the other irreparable damage that will occur, if the Local Union is permitted to strike its way around the Local CBA's grievance and arbitration procedure.

The Court need only consider whether breaches "have been threatened and will be committed" and whether they "will cause irreparable injury" to First Student. *See The Developing Labor Law: The Board, the Courts, and the National Labor Relations Act, Chp. 17*, 17.IV.B.1.a (2025); *see also St. Barnabas Hosp. v. 1199 Nat'l Health & Human Serv. Emples. Union*, No. 96-7834, 1996 U.S. App. LEXIS 25248, at *7 (2d Cir. Sep. 13, 1996) ("To establish irreparable harm [under *Boys Markets*], [a party] must demonstrate an injury that is neither remote nor speculative, but actual and imminent."). A union's signaling to others to engage in a work stoppage is sufficient to warrant injunction. *Catalytic, Inc. v. Monmouth & Ocean County Bldg. Trades Council*, 829 F.2d 430, 436 (3d Cir. 1987) (enjoining a union's leafletting that signaled to other unions to engage in a work stoppage contrary to the principles of *Boys Markets*).

21

To the extent the Local Union contends that the Teamsters are solely responsible for the strike threat, and therefore the Local Union need not be enjoined, that is incorrect. First, the Teamsters are not the bargaining representative of First Student's employees. The Local Union is, and it is the Local Union's strike and disruptive conduct that must be enjoined to preserve labor peace and aid arbitration. Second, where the Court enjoins one party, it also can enjoin third parties to ensure they do not violate the injunction. *Catalytic*, 829 F.2d at 434 (upholding an injunction against a non-striking local union where the dispute arose under their agreement and it involved a second union, which did strike). The Court also can enjoin conduct by third parties, including union affiliates, "that effectively precipitates action frustrating the arbitral process, even if that activity might not come within the boundaries of the *Boys Markets* exemption." *Id.* (upholding the above-mentioned injunction on this alternative basis as well); *see also CF&I Steel Corp. v. United Mine Workers*, 507 F.2d 170, 173, 177 (10th Cir. 1974) (affirming an injunction encompassing "all persons acting in concert and participation with" the striking union); *N.Y. Times Co. v. Newspaper & Mail Deliverers' Union*, 592 F. Supp. 1043, 1051 (S.D.N.Y. 1984) (issuing *Boys Markets* injunction against defendant and "all members and persons acting in concert or participation with it or them").

Here, a strike is imminent because the Teamsters have called for a nationwide strike when the National Agreement expires on March 31, 2026. Every indication is that the Local Union will participate. The Local Union rejected First Student's request for assurances that it will not strike. The Local Union also has refused to arbitrate its disputes with First Student despite First Student's formal demand for arbitration. And, as explained above, a strike would cause irreparable injury. Accordingly, the Court can and should issue an injunction now, before the strike begins.

22

## CONCLUSION

WHEREFORE, the Court should grant Plaintiff First Student's motion by order to show cause for a temporary restraining order and preliminary injunction. The Court has the authority to enjoin, and should enjoin, Local Union's conduct, in aid of arbitration, to preserve the status quo. Therefore, the Court should enjoin the Local Union from striking, or otherwise not performing or interfering with the completion of their assigned work, and it should enjoin Local Union and anyone acting in concert with it, from engaging in any other disruptive economic activity.

Respectfully submitted,

FIRST STUDENT, INC.,
By its attorneys,

FOLEY HOAG LLP

/s/ *Robert P. Haney*
Robert P. Haney
James W. Bucking (*pro hac vice* forthcoming)
Allison L. Anderson (*pro hac vice* forthcoming)
Patrick Scully (*pro hac vice* forthcoming)

1301 6th Avenue
New York, NY 10019
rhaney@foleyhoag.com
212 812 0356

155 Seaport Boulevard
Boston, MA 02210
617 832 1000
jbucking@foleyhoag.com
alanderson@foleyhoag.com

1331 17th Street, Suite 600
Denver, CO 80202
720 782 5080
pscully@foleyhoag.com

Dated: March 25, 2026

23

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(c)

I hereby certify that the foregoing Memorandum of Law complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, and contains 7,359 words, excluding those portions which are exempt.


Dated: March 25, 2026


/s/ *Robert P. Haney*
Robert P. Haney